UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONALD W. BROWDY,

    Plaintiff,

v.                                                Case No.: 8:18-cv-79-EAK-CPT

SYNOVOS, INC.,

    Defendant.
_____

### ORDER

Plaintiff Ronald W. Browdy sues Defendant Synovos, Inc. ("**Synovos**") for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("**Title VII**"). See generally (Doc. 11). Browdy alleges he was demoted and later denied a promotion because of his race. Id. at ¶¶12–51. Synovos moves for summary judgment. See generally (Doc. 29). Browdy opposes. See generally (Doc. 33). The Court will grant the motion.

### I.    Background

Synovos provides its customers with inventory control solutions. (Doc. 29-2 at ¶3). In May of 2012, Synovos hired Browdy to its "Implementation Team" as an "Implementation Manager." (Doc. 33-1). In December of 2013, Browdy's then-supervisor and Synovos's Integration Planning Senior Director, Diane Caldwell, promoted Browdy to "Implementation Team Manager." (Doc. 29-7 at 4). As an Implementation Team Manager, Browdy had supervisory responsibilities over four direct reports. (Doc. 29-5 at 16:16–25).

Case No.:  8:18-cv-79-EAK-CPT

In late-2015 or early-2016, Synovos decided to restructure its Implementation Team due to customer complaints and poor business performance.  (Doc. 29-2 at ¶¶5–6); (Doc. 33-10 at 3).  As part of the restructuring, Synovos replaced Caldwell with its Director of Operations, William Smith.  (Doc. 29-2 at ¶7); (Doc. 29-5 at 73:1–4).  Additionally, on April 2, 2016, Synovos eliminated its Implementation Team and created a new "Rapid Launch Team" ("**RLT**").  (Doc. 29-2 at ¶11); (Doc. 29-5 at 92:4–6).  All employees who were part of the Implementation Team, including Browdy, were automatically made part of the RLT, and all were converted to the position of "RLT Member."  (Doc. 29-2 at ¶¶12–13).  Browdy was the only Implementation Team Manager on the Implementation Team at the time of the conversion.  (Doc. 29-5 at 113:12–118:24).  The remaining employees on the Implementation Team who were converted to RLT Members had previously been in more junior positions.  Id. at 37:13–23, 61:7–18.  All RLT Members reported directly to Smith.  Id. at 81:3–7, 96:13–14.

On April 27, 2016, Smith sent an e-mail to the RLT Members explaining that he would be conducting meetings with each of them to discuss the details of the conversion from Implementation Team to RLT.  Id. at 109:16–110:9; (Doc. 29-7 at 16–17).  Smith attached to the e-mail the RLT Member job description.  (Doc. 29-7 at 14–15).  Browdy responded to Smith's e-mail the same day.  Id. at 16.  Browdy wrote, "After carefully reviewing the [RLT Member] job description you sent to the team[,] [i]t appears I have been demoted."  Id.  Browdy relayed similar sentiments at his

September 21, 2018 deposition, testifying that, after he reviewed the RLT Member job description, "a red flag went off," and he thought to himself, "[Y]ou know, I'm being demoted." (Doc. 29-5 at 93:11–14). In addition, Browdy cited his loss of supervisory responsibilities over direct reports and the fact that he no longer planned and organized certain projects as bases for believing he'd been demoted. Id. at 82:9–10.

In late-November of 2016, Synovos posted two openings for RLT Manager positions. (Doc. 29-7 at 22–28). Browdy applied. Id. at 28; (Doc. 29-5 at 127:7–17). Synovos engaged an outside consultant, Danielle White, to conduct an initial screening of candidates for the two RLT Manager positions. (Doc. 29-2 at ¶15); (Doc. 29-3 at ¶3); (Doc. 29-4 at ¶2). After reviewing the job description and candidates' applications, White provided Smith with a short list of candidates she identified as qualified for further consideration. (Doc. 29-2 at ¶18); (Doc. 29-3 at ¶¶5–6). White disqualified Browdy, and, consequently, he wasn't included on White's short list to Smith. (Doc. 29-2 at ¶¶15, 19); (Doc. 29-5 at 129:25–130:3); (Doc. 33-18 at 2). It's undisputed that White was unaware of Browdy's race when she disqualified him. (Doc. 29-4 at ¶5); (Doc. 29-5 at 130:7–21).

Because Browdy wasn't on White's short list, Smith didn't select him for the RLT Manager position. (Doc. 29-2 at ¶¶17–21); (Doc. 29-3 at ¶7). Browdy was notified on June 19, 2017, that he hadn't been selected. (Doc. 29-5 at 80:15–16); (Doc. 33-9 at 6–7).

Case No.: 8:18-cv-79-EAK-CPT

On July 6, 2017, Browdy filed his charge of discrimination with the Equal Employment Opportunity Commission ("**EEOC**"). (Doc. 29-1 at 2). In it, Browdy alleged he was denied a promotion to RLT Manager and "subsequently demoted" because of his race.[1]  Id.

## II. Discussion

Synovos argues it's entitled to summary judgment because Browdy failed to (1) exhaust his administrative remedies with respect to his demotion claim and (2) establish a *prima facie* case of race discrimination with respect to his failure to promote claim.  See generally (Doc. 29).  The Court will address each argument in turn.

### A. Demotion Claim

Before filing a Title VII action in federal court, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC.  Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970).  A plaintiff in a deferral state, such as Florida, must file a charge of discrimination with the EEOC no more than 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).  Browdy filed his EEOC charge on July 6, 2017, meaning that any claims arising from an employment practice that "occurred" before September 9, 2016, (*i.e.*, more than 300 days before he filed his EEOC charge) are time-barred.

---

[1] Although Browdy didn't specifically allege in his EEOC charge that he was demoted *because of his race*, district courts are to give liberal construction to a plaintiff's EEOC charge.  See Green v. Elixir Indus., Inc., 152 F. App'x 838, 840 (11th Cir. 2005).

4

Case No.: 8:18-cv-79-EAK-CPT

Browdy's demotion "occurred" – and his 300-day limitation period began running – when he learned he would be demoted. See Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980) (holding that a cause of action for employment discrimination accrues when the plaintiff learns of the alleged discriminatory act). The parties dispute when Browdy learned he would be demoted. Synovos argues Browdy learned he would be demoted no later than April 27, 2016, when Browdy e-mailed Smith and explained that, upon review of his new job description, it appeared he'd been demoted. (Doc. 29 at 12–13). Browdy, on the other hand, argues he learned he would be demoted on June 19, 2017, when Smith informed Browdy that he'd not been selected for the RLT Manager position, thus confirming "that his prior position of [Implementation Team Manager] was now removed for good." (Doc. 33 at 11–12). Browdy argues his position is bolstered by the fact that he never received formal notice of his demotion. Id.

The record establishes that Browdy learned he would be demoted no later than April 27, 2016, when Browdy received his new job description. By Browdy's own admission, his new job description demonstrated that he'd in fact been demoted. Browdy's argument that his prior position of Implementation Team Manager wasn't "removed for good" until June 19, 2017, is contradicted by the record. To be sure, the entire Implementation Team, including Browdy's position of Implementation Team Manager, was eliminated over fourteen months earlier on April 2, 2016. Thereafter, Browdy was reclassified as a RLT Member along with other employees who had

5

previously been his subordinates, and he lost his direct reports and certain managerial responsibilities.  Further, that Browdy didn't receive formal notice of his demotion is of no consequence, as formal notice of an allegedly discriminatory employment action is not required to start the limitation period running.  See Ching v. Mitre Corp., 921 F.2d 11, 14 (1st Cir. 1990) (holding that the plaintiff's limitation period began running when the employee found out that his employer had decided to terminate his employment, not on date he received formal notification); Farmer v. City of Fort Lauderdale, 814 F. Supp. 1101 (S.D. Fla. 1993) (Gonzalez, J.) (holding that the plaintiff's statute of limitations began running when she received informal, oral notice of her termination).

Browdy fails to establish the existence of a genuine fact issue with respect to meeting the prerequisite of exhaustion.  The record establishes Browdy's demotion "occurred" before September 9, 2016, (*i.e.*, more than 300 days before he filed his EEOC charge).  Accordingly, Browdy's demotion claim is time-barred.

### B. Failure to Promote Claim

Because a plaintiff in a Title VII action bears the initial burden of establishing a *prima face* case, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), in moving for summary judgment Synovos must show that Browdy has failed to establish a *prima facie* case, Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's

6

case"). A plaintiff fails to establish a *prima facie* case of intentional race discrimination where the plaintiff fails to offer evidence that the decisionmaker knew of the plaintiff's race. See Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir. 1987) (affirming the district court's summary judgment in favor of the defendant on the plaintiff's Title VII and section 1981 race discrimination claims where the plaintiff offered no evidence that the decisionmakers had knowledge of the plaintiff's race); Bafford v. Twp. Apartments Assocs., No. 8:06-cv-657-JDW-TGW, 2007 WL 4247763, at *5 (M.D. Fla. Nov. 30, 2007) (Whittemore, J.) (granting summary judgment in favor of the defendant on the plaintiff's section 1981 and section 1982 race discrimination claims where the plaintiff offered no evidence that decisionmaker had knowledge of the plaintiff's race). See also Lubetsky v. Applied Card Sys., Inc., 296 F.3d 1301, 1306 (11th Cir. 2002) (affirming district court's summary judgment in favor of the defendant on the plaintiff's Title VII religious discrimination claim where the plaintiff offered no evidence that the decisionmaker had knowledge of the plaintiff's religion). Synovos argues that Browdy has failed to establish a *prima facie* case because the record demonstrates that White was unaware of Browdy's race when she disqualified him from further consideration. The Court agrees.

White was hired to conduct an initial screening of all candidates for the two RLT Manager positions and provide a short list to Smith. Browdy applied for one of the positions. White – who was unaware of Browdy's race – disqualified Browdy from further consideration and excluded Browdy from her short list to Smith. Because

Browdy was not on White's short list, he was not selected for one of the RLT Manager positions. And indeed, that's Browdy's understanding of what occurred. (Doc. 29-5 at 129:25–130:3) (Q: "All right. And what's your understanding of [White's] involvement?" A: "My understanding [is] that she disqualified me in the system.").

Nonetheless, Browdy now attempts to raise a genuine fact issue with respect to whether White was in fact the decisionmaker. (Doc. 33 at 17). He does so by relying on the deposition testimony of Stacy O'Leary, Synovos's former HR Director. Id. At O'Leary's deposition, Browdy's counsel marked as an exhibit a July 18, 2017 e-mail exchange between O'Leary and White. (Doc. 33-11 at 36:19–37:2). During their exchange, O'Leary explained that Smith had told O'Leary that White disqualified Browdy because of his lack of experience. (Doc. 33-18 at 2). O'Leary asked White if White remembered any of that discussion with Smith, and if White had any e-mails regarding the same that White could forward to O'Leary. Id. White replied, "I looked through my e-mails and did not see anything regarding [Browdy]." Id. When asked at her deposition about the exchange, O'Leary testified that she interpreted White's e-mail to mean that White wasn't involved in the decision to disqualify Browdy from consideration for the RLT Manager position. (Doc. 33-11 at 39:4 –9) ("[C]learly, [White] responded that she looked through her emails, and she did not see anything regarding [Browdy]. So while [Smith] said that [White] disqualified [Browdy], [White] is claiming, after I asked her that question, that she really wasn't involved.").

8

Browdy's attempt to raise a genuine fact issue with respect White's role in disqualifying him from further consideration by relying on O'Leary's interpretation of White's e-mail fails.  O'Leary's interpretation of White's e-mail is facially inaccurate.  White never "claimed" that she wasn't involved in Browdy's disqualification; she simply stated that she didn't have any e-mails memorializing her conversations with Smith about Browdy's disqualification.  At best, O'Leary's interpretation of White's e-mail is exceedingly speculative.  At worst, it's a blatant mischaracterization.  The remainder of the record – including Browdy's own testimony – stands in direct contradiction to O'Leary's interpretation of White's e-mail.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

Browdy has failed to offer competent evidence that White was *not* the one to disqualify Browdy from further consideration for the RLT Manager position.  It's undisputed that White was unaware of Browdy's race.  Accordingly, Browdy has failed to carry his *prima facie* burden.

### III. Conclusion

Accordingly, it is **ORDERED** that Synovos's Motion for Summary Judgment, (Doc. 29), is **GRANTED**.  The Clerk is directed to enter judgment for Synovos and against Browdy, close the case, and terminate any pending motions.

Case No.: 8:18-cv-79-EAK-CPT

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 17th day of June, 2019.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel/Parties of Record

10